IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M.C., | : | No. 4:07-cv-2060 |
| Plaintiff | : | |
| | : | Judge John E. Jones III |
| v. | : | |
| | : | |
| ROBERT J. PAVLOVICH, JR., *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM AND ORDER**

July 25, 2008

This matter is before the Court on the motion to dismiss (Doc. 11) of defendants Marysville Borough and Marysville Police Chief Jacob J. Stoss, Jr. For the reasons set forth below, the motion will be granted in part and denied.

**I.      STANDARD OF REVIEW**

The Borough and Chief Stoss move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff M.C.'s complaint for failure to state a claim upon which relief can be granted. In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."

*Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. A plaintiff must make "a 'showing' rather than a blanket assertion of an entitlement to relief", and "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips*, 515 F.3d at 232 (citing *Twombly*, 127 S. Ct. at 1965 n. 3). "[A] complaint must allege facts suggestive of [the proscribed] conduct, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965, 1969 n.8.

Therefore, "stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S. Ct. at 1965 n. 3).

On the other hand, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231 (citing *Twombly*, 127 S. Ct. 1964-65, 1969 n.8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## II.   BACKGROUND

With this standard of review in mind, the following are the facts derived from the complaint for the purposes of the current motion, accepting as true all factual allegations and construing the complaint in the light most favorable to the plaintiff. *Id.* at 231.

Defendant Robert Pavlovich was employed as a police officer with the Marysville Police Department from 2000 to 2007. (Compl. ¶ 8.) Prior to his employment with the Marysville Police Department, Pavlovich was employed by the police department for Manheim Township, Lancaster County, Pennsylvania. (*Id.* at ¶ 9.) In 1995, while employed by the Manheim Township Police

Department, Pavlovich was charged with the indecent assault of a 13 year-old girl and corruption of minors. (*Id.* at ¶ 10.) As a result of these charges, Pavlovich was fired from the Manheim Township Police Department. (*Id.* at ¶ 11.) In 1999, Pavlovich began working again as a police officer, this time in Duncannon, Pennsylvania. (*Id.* at ¶ 12.) In that same year, however, he was fired again as a result of two complaints of sexual misconduct with minors. (*Id.*) The complaint alleges that members of the Marysville Borough Council and Chief Stoss were aware of Pavlovich's terminations from the Manheim Township Police Department and the Duncannon Police Department as well as his prior criminal charges of indecent assault and corruption of minors when they hired him as a Marysville police officer. (*Id.* at ¶ 21.)

During the period from July 2002 to March 2003, while employed as an officer of the Marysville Police Department, Pavlovich repeatedly committed sexual battery, indecent assault, and statutory rape against plaintiff M.C., who was 13 years-old, by forcing her to perform oral sex and other illegal sexual acts with him. (*Id.* at ¶ 13.) In 2005, when M.C. was 17 years-old, Pavlovich solicited her in an attempt to again commit sexual battery, indecent assault, and statutory rape. (*Id.* at ¶ 14.) Both of these incidents occurred while M.C.'s father was deployed overseas with the United States military. (*Id.* at ¶¶ 13, 14.) During the time he

was employed by the Marysville Police Department, Pavlovich also engaged in sexual battery, indecent assault, statutory rape, involuntary deviate sexual intercourse, unlawful contact with minors, corruption of minors, and bribery involving 14 other minor girls.  (*Id.* at ¶ 15.)

Pavlovich used his position as a Marysville police officer to force these underage girls to perform illegal sexual acts by threatening them with prosecution or offering not to prosecute them on other offenses.  (*Id.* at ¶ 16.)  Pavlovich also used Borough computers to communicate with minor girls in order to instruct them to sneak out of their homes at night and to meet him to engage in these illegal sex acts.  (*Id.* at ¶ 17.)  Further, Pavlovich, while on duty, traveled in his Borough police car to the homes of underage girls in order to engage in illegal sexual acts with them.  (*Id.* at ¶ 18.)

The parents of several of the minor girls assaulted by Pavlovich attempted to bring the incidents to the attention of government officials.  One girl's father contacted the Marysville Police Department, after which Pavlovich's contact with the girl stopped; however no investigation was made and no action was taken against Pavlovich.  (*Id.* at ¶ 19.)  The mother of another girl who had been the subject of Pavlovich's sexual advances reported the incidents to Chief Stoss, but was told nothing could be done unless there was a recording of Pavlovich's sexual

advances toward the girl. (*Id.* at ¶ 20.) Again, no investigation was made and no action was taken against Pavlovich. (*Id.*) The mother of a third girl finally contacted the Pennsylvania State Police. (*Id.* at ¶ 22.) Chief Stoss was aware of these complaints about Pavlovich's sexual misconduct but conducted no investigation, took no disciplinary action, and filed no charges against Pavlovich. (*Id.* at ¶ 23.)

In September 2006, the Perry County District Attorney asked the Pennsylvania Attorney General to investigate the complaints about Pavlovich. (*Id.* at ¶ 25.) After the Attorney General's office and State Police began an investigation, the Borough placed Pavlovich on paid leave in March 2007. (*Id.* at ¶ 24.) On October 25, 2007, after a statewide grand jury investigation, Pavlovich was arrested and charged with involuntary deviate sexual intercourse, sexual assault, unlawful contact with a minor, bribery, indecent assault, and corruption of minors involving his sexual contact with M.C. and 14 other girls ranging in age from 12 to 17 years-old. (*Id.* at ¶ 26.)

M.C.'s complaint in this action asserts causes of action pursuant to 42 U.S.C. § 1983 against Pavlovich, Chief Stoss, and Marysville Borough for violation of her substantive due process rights. (*Id.* at Counts I, II.) The complaint also asserts a state-law cause of action against Pavlovich for sexual

battery, indecent sexual assault, and statutory rape. (*Id.* at Count III.) M.C. seeks compensatory damages and punitive damages on each count.

## III.   DISCUSSION

The defendants first move to dismiss M.C.'s claim against Chief Stoss in his official capacity as duplicative of her claim against the Borough. They next move to dismiss M.C.'s substantive due process claim as failing state a claim upon which relief can be granted, and they finally argue that, in any case, punitive damages cannot be awarded. The Court agrees that the claim against Chief Stoss in his official capacity should be dismissed as redundant, and that punitive damages may not be awarded against the Borough and Chief Stoss in his official capacity. The defendants' motion will denied in all other respects.

### A.   Official Capacity Claim Against Chief Stoss

As an initial matter, the Court will construe M.C.'s complaint as asserting a claim against Chief Stoss in both his official and personal capacities. The defendants concede that Chief Stoss has been sued in his official capacity. The caption of the complaint, naming only "Jacob J. Stoss, Jr." rather than "Jacob J. Stoss, Jr., Chief of Police", and the allegation that Chief Stoss, acting under color

of state law, caused the deprivation of a federal right suffice to state a personal capacity claim.[1]  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

That said, M.C.'s claim against Chief Stoss in his official capacity will be dismissed as redundant with her claim against the Borough.  "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  "[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents ," *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985), and the government entity is the real party in interest in an official capacity suit, *Melo*, 502 U.S. at 25.  Therefore, in an official capacity suit, just as in a suit against the government entity itself, a plaintiff must show that the entity's  policy or custom played a part in the violation of federal law.  *Id.* (quoting *Graham*, 473 U.S. at 166).  For these reasons, suits against government officials in their official capacity are treated as suits against the government entity.  *Id.*  M.C.'s claims against Chief Stoss in his official capacity are therefore redundant and will be dismissed.  *See Cuvo v. De Biasi*, 169 Fed. Appx. 688, 693 (3d Cir. 2006); *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988).

---

[1] The defendants appear to argue that M.C. has not stated a personal capacity claim because the complaint alleges only actions taken by Chief Stoss in his capacity as police chief.  The Supreme Court has explicitly rejected this argument.  *See Hafer*, 502 U.S. at 27-28.

**B.	Section 1983 Claim**

M.C. asserts two theories for her substantive due process claim against the Borough and Chief Stoss: that these defendants failed to properly screen Pavlovich before hiring him and that they failed to supervise Pavlovich while he worked as a Marysville police officer. The defendants argue that M.C.'s claim must be dismissed because her complaint does not demonstrate the requisite "deliberate indifference" necessary to maintain a failure to screen or failure to supervise claim. The Court strongly disagrees and finds that M.C. has stated a claim.

A municipality cannot be held liable under § 1983 on a respondeat superior theory for an injury inflicted solely by its employees or agents.[2] *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 690, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Thus, a plaintiff seeking to impose liability on a municipality under § 1983 must identify a

---

[2] Although phrased in terms of municipal liability, this discussion applies equally to the claims against the Borough and Chief Stoss as "the standard for personal liability under section 1983 is the same as that for municipal liability." *Carter v. City of Philadelphia*, 181 F.3d 339, 356 (3d Cir. 1999); *see also Sample v. Diecks,* 885 F.2d 1099, 1117-18 (3d Cir. 1989).

municipal "policy" or "custom" that caused the plaintiff's injury.  *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997).  A "policy" is a statement, ordinance, regulation, or decision emanating from the municipality's duly constituted legislative body or those officials whose acts may fairly be said to be those of the municipality.  *Id.* at 403-04; *Monell*, 436 U.S. at 690.  A "custom" is a practice that has not been formally approved by an appropriate municipal decisionmaker, but which is so widespread, permanent, and well settled as to have the force of law.  *Bryan County*, 520 U.S. at 404; *Monell*, 436 U.S. at 691.  For liability to be imposed on the municipality under § 1983, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

The Third Circuit has observed that "[t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983:"

> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy.  The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself.  Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the

agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007) (quoting *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). The third situation is at issue here, where M.C. alleges that the Borough's failure to screen and supervise Pavlovich resulted in the violation of her substantive due process rights.

It is not enough, however, for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. *Bryan County*, 520 U.S. at 404. "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* Where, as here, the plaintiff seeks to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate the plaintiff's rights, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as

to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Id.* at 407 (citing *City of Canton*, 489 U.S. at 388).

In sum then, for liability to be imposed on a municipality under § 1983, the plaintiff must show both deliberate indifference by the municipality to the plaintiff's constitutional rights and causation, in that a municipal policy or custom directly caused the constitutional violation at issue. Generally, the allegation that a municipality failed to adequately screen, train, or supervise municipal employees will meet this burden only where the failure has caused a pattern of violations, *see id.* at 407-09; *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000); *Sample*, 885 F.2d at 1118, or where the municipality had contemporaneous knowledge of the offending incident, *see Montgomery v. De Simone, PTL*, 159 F.3d 120, 127 (3d Cir. 1998). In the absence of a pattern or actual knowledge, the burden on the § 1983 plaintiff is high. *Berg*, 219 F.3d at 276. In such a case, the constitutional violation must have been so obvious or so likely to result that the municipality can reasonably be said to have been deliberately indifferent to the need to take action. *See Bryan County*, 520 U.S. at 409-11; *City of Canton*, 489 U.S. at 390; *Berg*, 219 F.3d at 276; *Sample*, 885 F.2d at 1118. Especially where the plaintiff alleges that a single hiring decision is the basis for municipal liability, "the connection between the background of the particular applicant and the

specific constitutional violation alleged must be strong." *Bryan County*, 520 U.S. at 412. As the Supreme Court has stated, in a failure to screen case,

> Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference".... [A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff.

*Id.* at 411-12.

In this case, the allegations of the plaintiff's complaint, assumed to be true, suffice to meet the admittedly high burden of establishing deliberate indifference and causation. The complaint alleges a pattern of similar violations that began before Pavlovich's employment with the Marysville Police Department and continued thereafter. Pavlovich's continuing pattern of conduct involved not just M.C., but *fourteen* other minor girls. Pavlovich used Borough equipment and his position as a police officer to directly accomplish his illegal ends. M.C. alleges that, prior to hiring Pavlovich, the Borough and Chief Stoss were aware of this pattern, which had resulted in his prior termination from two other police departments. Further, the complaint alleges that the Borough and Chief Stoss

personally became aware of Pavlovich's continuing pattern of conduct through the complaints of the parents of at least three of the minor victims. These facts establish that the defendants were confronted with information which made it obvious that Pavlovich would likely inflict the particular injury suffered by M.C., and yet made the decision to hire Pavlovich. In the face of this clear and unreasonable risk, the defendants took no action to adequately supervise Pavlovich despite his repeated misconduct and the multiple complaints which should have made his constitutional violations obvious. Accordingly, M.C. has stated a claim under § 1983 against the Borough and Chief Stoss in his personal capacity.

### C.   Punitive Damages

M.C. seeks punitive damages against the Borough and Chief Stoss in her § 1983 claim. Supreme Court precedent makes it clear that punitive damages are not available under § 1983 against a municipality or a municipal official sued in his official capacity. *Graham*, 473 U.S. at 167 n.13; *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Therefore, M.C.'s request for punitive damages against the Borough and Chief Stoss in his official capacity will be dismissed with prejudice. Punitive damages may be recovered under § 1983, however, against an official sued in his personal capacity. *Graham*, 473 U.S. at

167 n.13; *City of Newport*, 453 U.S. at 269. Therefore, M.C.'s request for punitive damages against Chief Stoss in his personal capacity will not be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss will be granted with respect to the plaintiff's official capacity claim against Chief Stoss and request for punitive damages against the Borough and Chief Stoss in his official capacity. The motion is denied in all other respects.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1. Defendants' Motion to Dismiss (Doc. 11) is GRANTED in part and DENIED in part to the following extent:

   a. Plaintiff's claim against Chief Stoss in his official capacity is DISMISSED with prejudice; and

   b. Plaintiff's request for punitive damages against Marysville Borough and Chief Stoss in his official capacity is DISMISSED with prejudice.

/s/ John E. Jones III
John E. Jones III
United States District Judge